State vs. Molisse.

No. 9595.

THE STATE OF LOUISIANA VS. EDWARD MOLISSE.

*Res gestæ* are events speaking for themselves through the instinctive and spontaneous words and acts of participants, and not the words of the participants when narrating the events. The distinguishing characteristic of these declarations is that they must be necessary incidents of the criminal act or immediate concomitants of it, and that they are not due to calculated policy.

Time does not absolutely and alone determine whether a statement is a part or not of the *res gestæ*. No inflexible rule as to the length of the interval between the act of killing and the declaration of the victim can be formulated. The facts of each case must speak for themselves.

If the declarations are unconsciously associated with and related to the homicidal deed, even though separated from it by a short time, they are evidence of the character of the deed and are a part of the *res gestæ*.

Where the deceased, ten minutes after he had been fatally shot, said to a witness, "if he had not been so willing to fight he would not have been shot by the defendant," the statement is a part of the *res gestæ* and should have gone to the jury.

APPEAL from the Criminal District Court for the Parish of Orleans. Roman, J.

*M. J. Cunningham*, Attorney General, and *Lionel Adams*, District. Attorney, for the State, Appellee.

*D. C. Moise, A. A. Ker* and *J. Duvigneaud* for Defendant and Appellant.

The opinion of the Court was delivered by

MANNING, J.   The defendant appeals from a sentence to five years' imprisonment at hard labour upon a conviction of manslaughter, and presents but one question for our review.

He offered one McGruder as a witness to prove that the deceased, ten minutes after he had been fatally shot, said to the witness "if he had not shewn himself so plucky and willing to fight he would never have been shot by the defendant." The judge excluded the testimony because "it was not under the circumstances part of the *res gestæ* and was not said by the deceased under the sense of impending dissolution."

"*Res gestæ*," says Wharton, "are events speaking for themselves through the instinctive words and acts of participants, not the words and acts of the participants when narrating the events but what is said or done by participants under the immediate spur of the transaction, because it is the transaction which then speaks.   In such cases it is not necessary to examine as witnesses the persons who, as participators in the transaction, thus instinctively spoke or acted.   What they did or said is not hearsay; it is part of the transaction itself.   And as long as the transaction continues, so long do acts and deeds emanating from it become a part of it, so that in describing it in a court of justice they can be detailed.   The question is, is the evidence offered that of the event speaking through participants, or that of observers (or particpants) speaking about the event.   In the first case, what was said can be introduced without calling those who said it; in the second case, they must be called.   Nor are there any limits of time within which the *res gestæ* can be arbitrarily confined.   They vary in fact with each particular case.   *   *   *   As soon as we pass the line which distinguishes between the transaction talking of itself and talking as modifying the transaction, in other words, as soon as we pass the line between the time of the transaction and the time that follows it, we have no limits that can be imposed.   If we are to receive declarations made ten minutes after a transaction, we must receive declarations made ten years afterwards."   Whart. Cr. Ev., sec. 262.

State vs. Molisse.

This would exclude the testimony offered, but in the next section the author proceeds:

"The distinguishing feature of declarations of this class is that they should be the necessary incidents of the litigated act; necessary in this sense, that they are part of the immediate concomitants or conditions of such act, and are not produced by the calculated policy of the actors. They need not be coincident as to time if they are generated by an excited feeling which extends without break or let-down from the moment of the event they illustrate. In other words, they must stand in immediate causal relations to the act and become part either of the action immediately producing it, or of action which it immediately produces. Incidents that are thus immediately and unconsciously associated with an act, whether such incidents are doings or declarations, become in this way evidence of the character of the act. Under the rule before us, evidence in homicide trials has been received of the exclamations of the defendant at the time of the attack; of the cries of the deceased and of others assaulted at the same time; of statements of the deceased, at the time or so soon afterwards as to preclude the hypothesis of concoction or premeditation, charging the defendant with the act." Sec. 263.

And, under that, the testimony is admissible.

The rule is that time does not determine absolutely whether a statement is part or not of the *res gestæ*, although it is a factor and an important factor in estimating whether it is, and therefore it is not correct to say that declarations made ten years after an event can as well be received as those made ten minutes after it. If the acts or declarations are unconsciously associated with and related to the homicidal deed, even though separated from it by a short time, they are evidence of the character of the deed and a part of the *res gestæ*. No inflexible rule as to the length of the interval between the act of killing and the act or declaration of the person killed can be formulated. In that matter the facts of each case stand alone and must speak for themselves. In each case the particular facts and incidents must be considered as an independent group, and the judge must determine whether they fall within or without the operation of the rule. And this is what Greenleaf means when he says the trial judge must determine the admissibility of the evidence, and a large discretion is allowed him. He even says the ruling of the trial judge thereon is conclusive. Cr. Ev. sec. 108.

That is not so—certainly not under our uniform practice. His ruling is reviewable by this Court, or we should not now be considering it.

There are several cases in the books that justify the contention of the defendant in this appeal.

In Massachusetts, the deceased wounded and bleeding ran from her room where the wound was inflicted to the room occupied by the witness in the same house but in the story above, and knocked at the door, crying murder. On being let in, the deceased asked the occupant of that room to go for a doctor and a priest, saying she was killed. This declaration was admitted, the court ruling that although there was such interval as to allow the deceased to go from her room up stairs to another, it was sufficiently soon after the occurrence to be a part of the *res gestæ*. Com. v. McPike, 3 Cush. 181.

The English courts have ruled in like manner under resembling circumstances. Thus, a prisoner was charged with manslaughter in killing the deceased by driving a cabriolet over him. A person, who saw the cabriolet drive by but did not see the collision, went up to the injured man immediately afterwards, attracted by a groan, when he made a statement to the witness of the manner in which he had been run over. It was held to be a part of the *res gestæ*. Rex v. Foster, 6 C. & P. 325. In the same line see Thompson v. Trevanion, Skin. 402.

A man was killed by a blow from a stick. A girl heard his cry and going to him asked what was the matter and he said he had been robbed by the man who had walked with him. This man was the party indicted for the murder, and the girl's evidence was admitted. Reg. v. Lung, 6 Cox C. C. 477.

The witness in this case should have been permitted to testify. The statement of the deceased to him was soon enough after the homicidal act and sufficiently connected with it to be an immediate concomitant of it and not a statement proceeding from or suggested by a calculated policy, and was therefore a part of the *res gestæ*.

But the State insists that even if it was admissible, it could not affect the verdict. The prosecution was for manslaughter and the conviction was of manslaughter. If the jury had heard the deceased's statement that he would not have been shot if he had not been so willing to fight, it could not have reduced the verdict of manslaughter to one for a less offence.

It may be that the jury would so have found, but it is not for us to find so for them. The evidence should have gone to them. They alone have the right to weigh it.

It is therefore ordered and decreed that the sentence upon the prisoner and the verdict of the jury are set aside, and the case is remanded to the lower court for a new trial.

Todd, J., dissents.

## DISSENTING OPINION.

TODD, J. I do not consider the declaration referred to a part of the *res gestæ*, and even if it were, that it was of sufficient importance or significance as to have affected the conclusion reached by the jury.

I therefore dissent.